IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Terrence Greene, | ) | Civil Action No.:2:14-cv-3238-BHH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 10; see also Dkt. No. 9.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner, through counsel, brought the instant habeas action on August 12, 2014. (See Dkt. No. 1; Dkt. No. 1-1.) On November 10, 2014, Respondent filed a Motion for Summary Judgment. (Dkt. No. 10; see also Dkt. No. 9.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on March 2, 2015. (Dkt. No. 22.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In April of 2010, the Richland County Grand Jury indicted Petitioner for murder. (See R. at 177-80.) Petitioner was represented by Nathaniel Roberson, Esquire. (See R. at 1.) On January 24 and 25 of 2011, Petitioner pled guilty to voluntary manslaughter before the Honorable Clifton Newman. (See R. at 1-65.) On January 25, 2011, Judge Newman sentenced Petitioner to 28 years. (R. at 64.)

Petitioner did not file a direct appeal. However, on November 14, 2011, he filed an application for post-conviction relief ("PCR"). (R. at 66-81.) Petitioner asserted therein that he was

1

being held in custody unlawfully due to the lack of subject matter jurisdiction, ineffective assistance of counsel, and an involuntary guilty plea. (See R. at 68.) On December 4, 2012, through counsel, Petitioner supplemented his application for PCR to include the assertion that his guilty plea "failed to include a sufficient factual basis, or admission of guilt[,] to the charged offense." (R. at 92.)

On December 7, 2012, an evidentiary hearing was held before Judge J. Ernest Kinard, Jr. (R. at 94-160.) Petitioner was present and represented by Jonathan Milling, Esquire. (See R. at 94.) In a written order dated December 31, 2012, Judge Kinard denied the application for post-conviction relief and dismissed the petition. (R. at 161-76.)

Petitioner, through his attorney Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on July 23, 2013. (See Dkt. No. 9-1.)[1] Through counsel, Petitioner raised the following issue:

Whether petitioner's guilty plea was knowingly and intelligently entered when the plea judge incorrectly advised him that he could receive the death penalty?

(Dkt. No. 9-1 at 3 of 9.) Mr. Pachak also filed a petition to be relieved as counsel. (Dkt. No. 9-1 at 8 of 9.)

In an order dated May 22, 2014, the Supreme Court of South Carolina denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 9-2.) The matter was remitted to the lower court on June 9, 2014. (Dkt. No. 9-3.)

Petitioner, through counsel, then filed the instant habeas petition, wherein he raised the following grounds for review:

**Ground One**: Petitioner's Plea of guilty was not voluntarily and intelligently entered where it was the product of ineffective assistance of counsel prior to and during his guilty plea proceeding inasmuch as Plea Counsel failed [to] adequately advise Petitioner concerning information relayed to Petitioner from the bench concerning his exposure to a possible exposure to a death sentence if he proceeded to trial for murder. Petitioner asserts that his plea of guilty was entered in violation to his right to due process of law and his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, where Counsel failed to insure that Petitioner was aware that if he did not go through with,

_____

[1]See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

2

or withdrew, his plea of guilty he would not be exposed to a possible death sentence at the jury trial that would take place that week.

**Ground Two**: The Petitioner received ineffective assistance of counsel, in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, where Plea Counsel allowed him to enter a plea of guilty to voluntary manslaughter where the record indicated that there was no sufficient factual basis for the plea inasmuch as Petitioner's admissions during the plea proceeding did not establish a factual basis for his guilt of the crime to which he was allowed to plead or the original charge of murder.

**Ground Three**: Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated prior to and during his guilty plea proceeding in that counsel failed to thoroughly and accurately advise Petitioner concerning the law as it relates to accomplice liability and the potential application of the law of accomplice liability to the facts in his case.

(Dkt. No. 1-1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th

3

Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 10; see also Dkt. No. 9.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

### A.    Ground One

In Ground One, Petitioner contends counsel was ineffective, and his guilty plea was therefore involuntary, as counsel "failed adequately advise Petitioner concerning information relayed to Petitioner from the bench concerning his exposure to a possible exposure to a death sentence if he proceeded to trial for murder." (Dkt. No. 1-1 at 1 of 8.) Petitioner asserts that counsel "failed to insure that Petitioner was aware that if he did not go through with, or withdrew, his plea of guilty he would not be exposed to a possible death sentence at the jury trial that would take place that week."

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668,

687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.  Id. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The PCR court addressed this claim of ineffective assistance of counsel and involuntary guilty plea. (See R. at 164-68.) The PCR court first summarized the Petitioner's allegations and the testimony at the PCR hearing as follows:

> Applicant alleges his guilty plea was entered involuntarily and unintelligently as a result of the plea judge's commentary at the plea hearing. Specifically, Applicant contends his guilty plea was rendered involuntary where the plea judge mentioned the death penalty as a possible sentence for conviction on the underlying murder charge.
> At the PCR hearing, Applicant testified he was aware the potential sentence for murder was thirty (30) years in prison up to a potential life sentence, but was not

5

aware prior to the January 24, 2011, plea hearing he could potentially face the death penalty as a result of the underlying murder charge if convicted at trial. Applicant went on to say he had reservations during the plea hearing about pleading, but once he heard Judge Newman mention the death penalty felt as though he *had* to plead guilty. On cross-examination, Applicant readily admitted he told the plea judge he wanted to plead guilty to the charge long before any mention of the death penalty in the record.

Counsel testified he recalled being retained by Applicant's family to represent Applicant on the charge and remembered meeting with Applicant numerous times to discuss the case. Counsel noted that because Applicant was only sixteen (16) at the time, he obtained permission from Applicant to incorporate one of his parents in all of their conversations to ensure Applicant understood the talks. Counsel noted he initially discussed the charges in general with Applicant, including the potential sentences Applicant was facing. Prior to his receipt of the discovery materials, counsel said, he was unsure of the extent of the charges and therefore reviewed with Applicant the government's ability to seek the death penalty as a potential sentence for murder under the right circumstances. Counsel said he was "sure" he had discussed with Applicant and his family in advance[] of the plea hearing that the state would **not** be seeking the death penalty on the charge, as it would have been required to serve prior notice of such. Counsel stated he believed Judge Newman mentioned the death penalty as a potential outcome of the murder charge only as "academic commentary" to indicate Applicant's plea to voluntary manslaughter was "a good deal."

On cross-examination, counsel again noted the state was not seeking the death penalty for the murder charge as it never served notice of intention to seek such. On re-direct examination, counsel explicitly reiterated that Applicant and Applicant's family were well aware prior to the plea hearing that the death penalty was not a potential sentence on the table as he had explained to them the state would have had to serve notice of such prior to the hearing.

(R. at 164-66.)

In analyzing the merits of the instant ineffective assistance and involuntary guilty plea claim, the PCR court stated,

After a thorough review of the record and testimony presented at the evidentiary hearing, this Court finds this allegation to be without merit. As a preliminary note, this Court finds counsel's testimony to be **very** credible, while conversely finding Applicant's testimony to be **not** credible.

The plea hearing transcript made part of the record is extremely thorough and clear in advising Applicant of his constitutional rights, the nature of the charge he was pleading to, the state's evidence against him, the waiver of rights associated with entry of a guilty plea, the realistic potential consequences carried by the charge, and other relevant matters pertaining to his plea. This Court can see no portion of the plea

which fails to meet the requirements of an intelligent and voluntary guilty plea as set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969).

Further, based on the credible evidence presented, this Court can find no way in which counsel's performance was deficient, or how such an alleged deficiency resulted in prejudice to Applicant. "A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of a plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, [he] would not have plead guilty but would have insisted on going to trial." Roscoe v. State, 345 S.C. 16, 20, 546 S.E.2d 417, 418 (2001). Counsel's credible testimony reflects he gave Applicant and Applicant's family all of the necessary information and advice necessary to make a knowing, intelligent and voluntary decision whether to enter a guilty plea or otherwise proceed to trial to challenge the murder charge. Included in those discussions was counsel's initial explanation of the death penalty as a possible consequence of a murder charge, and his subsequent notification to them well in advance[] of the plea hearing that the state would *not* be seeking the death penalty. Counsel's initial advisement of such a penalty prior to his receipt of any discovery materials was not erroneous. See S.C. Code § 16-3-10, *emphasis added* ("A person who is convicted of or pleads guilty to murder must be punished by **death**, or by a mandatory minimum term of imprisonment for thirty years to life.") Applicant was well aware the state was not seeking the death penalty at the time his case was called to trial, and his plea was entered with this information in mind. Therefore, this contention is without merit.

The record of Applicant's plea only further convinces this Court the plea judge's commentary had no effect on Applicant's decision to waive jury trial by entering the current plea. On January 24, 2011, Applicant appeared before Judge Newman where he proceeded through the entirety of the plea process, acknowledging the ramifications of entering the plea, recognizing the realistic possible punishments he was facing for Voluntary Manslaughter, setting forth his satisfaction with counsel's representation, admitting to his participation in the crime and requesting the court accept his plea. It wasn't until the following day (January 25, 2011) during the sentencing phase of the plea that Judge Newman made the comment now complained of. In particular, after Applicant's statement in mitigation to the plea court, the following colloquy took place between Applicant and Judge Newman:

> Court: "Well did you rob [victim]?"
> Applicant: "No, sir, I did not rob him, Your Honor. As I confessed that I did get out of the car and walk back to get the money, Your Honor."
> Court: "Was that robbery?"
> Applicant: "Yes, sir, because he—"
> Court: "It says, 'I put the car in park and got out of the car. I ran down to the rocks and saw Dray laying there.' Is that part true?"
> Applicant: "Yes, sir."
> Court: "I went into his pockets and took the money."

7

> Applicant: "Yes, sir."
> Court: "You did that?"
> Applicant: "Yes, sir."
> Court: "That's robbery, isn't it?"
> Applicant: "Yes, sir, but may I please . . ."
> Court: "Sure."
> Applicant: "See, yes, sir, you're right. I have no intentions to try to deny saying that not robbery because in reality that is robbery, Your Honor, but the honest truth, Your Honor–"
> Court: "Armed robbery, that's 10 to 30. That's the sentence for that."
> Applicant: "Yes, sir, but the truth is when he–"
> Court: "Murder committed during the course of the robbery. That's up to life or the death penalty for that."

> It is clear the commentary by Judge Newman was purely theoretical and of no application to Applicant's case as Applicant was not facing, nor was he ever facing, an indicted charge of Armed Robbery as a result of this incident. Further, this comment was made by the plea judge a full day after Applicant's entry of the plea and, therefore, clearly had no impact on Applicant's decision to plead guilty. For the reasons set forth above, this Court finds this allegation to be wholly without merit. Accordingly, it is denied.

(R. at 166-68.)

The undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground One. As noted above, under the AEDPA, the instant court may not grant habeas relief unless the underlying state adjudication

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d). The state court's adjudication of the claim set forth in Ground One does not meet this high standard. The state court found counsel's testimony "**very** credible . . . while conversely finding [Petitioner's] testimony to be **not** credible." (R. at 166.) Such a factual finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption

. . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003).

Petitioner's claim in Ground One is that counsel was ineffective, and his guilty plea was involuntary, because Judge Newman indicated that the penalty for murder was "up to life or the death penalty." (R. at 168.) In order to satisfy the "prejudice" prong of Strickland in the instant case, Petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The state court's rejection of the instant claim does not warrant federal habeas relief. As the state court noted, Judge Newman made the at-issue comment on January 25, 2011, the day *after* Petitioner had already indicated his desire to plead guilty. (See R. at 57.) Judge Newman accepted the guilty plea on January 24, 2011; sentencing was deferred to the following day. (See R. at 24.) Moreover, the state court's conclusion that Judge Newman's "death penalty" comment was "purely theoretical" has support in the record, as the at-issue comment came after his comment about the sentencing range for armed robbery, a charge for which Petitioner was not even indicted. (R. at 57.) In light of the foregoing, Respondent's motion as to Ground One should be granted. See Harrington, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004))); Wilson, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."); see also Kegel v. Del Papa, 145 F. App'x 587, 588 (9th Cir. 2005) (no habeas relief on claim that counsel was ineffective in failing to "advise him prior to the entry of his plea that the prosecution was not going to pursue the death penalty"; the court stated, "[U]nder the deferential standard of AEDPA, it is not an unreasonable determination of the facts. Defense counsel Hall consistently testified that he was sure that Kegel knew that the death penalty was not a possibility, and that the death penalty was not even mentioned in the attorneys' recommendation that Kegel plead guilty. Kegel has presented no clear and

convincing evidence, as is his burden, that he was not told by any of his defense counsel that the death penalty was not a possibility. Certainly, he presented no clear and convincing evidence that he decided to plead guilty for fear of the death penalty if he went to trial.").

**B.**    **Ground Two**

Petitioner asserts in Ground Two that his counsel was ineffective, and his plea was therefore involuntary, "where Plea Counsel allowed him to enter a plea of guilty to voluntary manslaughter where the record indicated that there was no sufficient factual basis for the plea inasmuch as Petitioner's admissions during the plea proceeding did not establish a factual basis for his guilt of the crime to which he was allowed to plead or the original charge of murder." (Dkt. No. 1-1 at 6 of 8.)

The PCR court addressed this claim of ineffective assistance of counsel and involuntary guilty plea. (See R. at 168-75.) The PCR court first summarized the Petitioner's allegations and the testimony at the PCR hearing as follows:

> Applicant . . . alleges the record of Applicant's guilty plea fails to establish a sufficient admission of guilt to the charges to support the court's acceptance of the plea. Applicant contends while the state was proceeding under the theory of accomplice liability or "the hand of one is the hand of all" to prove Applicant's guilt, the factual admissions by Applicant at the plea hearing are insufficient to support the plea entered.
>
> Applicant testified he never told counsel he wanted to plead guilty to the murder charge, and alleged he in fact told counsel he wanted to go to trial on the charge. Applicant stated initially he was set to go to trial in December of 2010, at which time his case was severed from that of his codefendant. He noted his codefendant was found guilty and sentenced to forty (40) years imprisonment. Applicant said his case was set for trial on January 24, 2011, at which counsel approached him with the state's plea offer for voluntary manslaughter and told Applicant it would be in his best interest to accept it. Applicant testified that prior to that day, counsel said Applicant would be acquitted of the charge through directed verdict.
>
> Applicant said he and counsel discussed accomplice liability and "the hand of one is the hand of all" during their pretrial meetings. Applicant said he understood that theory to mean if he knew the robbery was going to happen and he didn't do anything to stop it, he was guilty of it. He went on to say counsel advised him if he saw the crime and didn't report it, that was enough for him to be found guilty of the underlying charge. Applicant noted he was aware that voluntary manslaughter carried two (2) to thirty (30) years in prison, but alleged counsel told him to expect to receive six (6) or seven (7) years if he pled guilty.

Applicant went on to say he recalled telling the plea judge the facts of the case at the plea hearing. According to Applicant's testimony at the PCR hearing, he and codefendant discussed robbing the victim the night before the incident, but Applicant told codefendant not to do it. Applicant said he thought "it was over" after that discussion. He went on to say he called victim the next morning to get marijuana from him before victim went to church, but had no knowledge codefendant was going to rob victim when they made contact with him.

Counsel testified he was retained to represent Applicant by his family shortly after Applicant's arrest. He said he met with Applicant immediately to discuss the charges, but at that time only knew the information being relayed by the media as it was a high publicity case and he had not yet received any discovery materials. Counsel noted any time he had a client facing more than ten (10) years in prison, he would get permission from the client to incorporate some family members into their discussions to ensure the client understood everything, which was what he did in this case. Counsel said he met with Applicant's family at his house early on, where he was able to review the charges with them and review "basic criminal procedure" with them. From there, counsel said, he reviewed the charges with Applicant, as well as Applicant's constitutional rights, possible punishments he was facing, the indictment procedures, the elements of the crime charged, and other relevant information. Counsel specifically testified Applicant did not have any problems understanding or participating in their discussions, but noted he seemed disappointed and remorseful.

Counsel went on to say after receiving the discovery file, he reviewed the state's evidence with both Applicant and Applicant's parents, as well as gave Applicant's parents a copy of the discovery file. Counsel said Applicant "understood all of" the discovery after the two outlined the entirety of it together, and noted there were three (3) statements from Applicant to law enforcement included in the file. Based on those three statements *alone*, counsel said, there was sufficient evidence for the state to convince a jury Applicant was guilty of the charge based on accomplice liability, as Applicant openly admitted he and codefendant had discussed robbing victim the night prior to the incident and it was Applicant who called victim to set up the meeting and enticed victim to ride to the secluded location with he and codefendant.

Counsel went on to say statements of witnesses who were with Applicant and codefendant later in the day indicated Applicant continued to talk about the incident and his involvement. He reiterated it was Applicant's phone call to victim that set up the entire incident, and said the fact that Applicant stole victim's wallet while victim was still alive and moaning on the ground was detrimental at trial. With all of the evidence that would come out at trial, counsel said he believed the state had "about an iron clad case" against Applicant for murder based on accomplice liability.

Counsel said he explained the lesser included offense of voluntary manslaughter to Applicant, and described how the jury would likely be able to consider guilt as to that charge at trial as well if requested by the state. Counsel noted a pretrial hearing on his motion to suppress Applicant's statements was held in December of 2010 prior to the motion for severance being granted, at which the trial court ruled Applicant's statements admissible at trial. This ruling, counsel said, was

incorporated by the trial judge when the matter was called to trial on January 24, 2011.

Regarding plea negotiations, counsel testified there were no plea offers extended by the state prior to the case being called to trial, but on the day the trial was set to start the state offered Applicant the chance to plead to voluntary manslaughter without recommendations or negotiations. He said he discussed the offer with Applicant and Applicant's family, after which he allowed Applicant and his family to discuss the offer in private for a while. At the end of their meeting, counsel said, both Applicant and his family believed accepting the plea was in Applicant's best interest. Counsel noted he made it clear to Applicant that it was *solely* Applicant's decision whether to plead guilty or not, emphasizing that Applicant's family could not make the decision for him.

Counsel stated he believe Applicant was well aware of the rights he was waiving by pleading guilty, including the right to challenge the charges against him through a jury trial. Counsel stated he never told Applicant to expect to receive any particular sentence on the plea and said he had no reason to believe prior to or during the plea hearing that Applicant had any doubts or reservations about entering the plea.

On cross-examination, counsel noted that while the record may or may not reflect Applicant had reservations about admitting his guilt, Applicant "never had a hard time" admitting his guilt to counsel in their pretrial discussions. Counsel finished by saying he believed Applicant was upset because he did not want to accept that he could be guilty of murdering victim in this case without having physically committed the assault himself.

(R. at 168-72.)

In analyzing the merits of the instant ineffective assistance and involuntary guilty plea claim,

the PCR court stated,

This Court finds this allegation to be without merit. As a preliminary note, this Court finds the contention that the plea court erred in accepting a guilty plea without a sufficient factual basis or admission of guilt in the record to be a direct appeal issue improper for post-conviction relief. Any such alleged trial court error is an issue that could have been properly raised on direct appeal and, therefore, is improperly raised through this action. Post-conviction relief is not a substitute for a direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1974). A post-conviction relief application cannot assert any issues that could have been raised at trial or on direct appeal. Ashley v. State, 260 S.C. 436, 196 S.E.2d 501 (1973). Further, S.C. Code § 17-25-20(b) procedurally bars such issues from being raised through post-conviction relief. Accordingly, to the extent Applicant alleges his plea was improperly accepted by the plea court without a sufficient factual basis or admission of guilt, this Court finds the allegation must be dismissed.

Further, in turning to the merits of the allegation, this Court finds the contention to be wholly without merit. To reiterate, this Court finds counsel's testimony to be credible, while conversely finding Applicant's testimony to be not

credible. Applicant contends his admissions on the record at his plea hearing are insufficient to support a finding of guilt to the charge and, therefore, the plea cannot stand. "As a preliminary matter, it is well-settled that a defendant need not admit guilt in order to enter a valid guilty plea." James v. State, 377 S.C. 81, 84, 659 S.E.2d 148, 150 (2008); citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160 (1970). "Instead, a guilty plea need only represent a voluntary and intelligent choice among alternative courses of action open to the defendant." Id.

Counsel's credible testimony reflects Applicant was fully and adequately advised of all relevant issues regarding his case, and was given sufficient information and advice to make an informed and intelligent decision whether to plead guilty to the lesser included offense of voluntary manslaughter as offered by the state or proceed to trial to challenge the murder charge as indicted. Counsel thoroughly explained the theory of accomplice liability to Applicant and reviewed every individual piece of evidence in the discovery file with Applicant to detail how the state would try to convince the jury of Applicant's guilt based on that legal theory. Counsel testified it would have been a factual issue for the jury to decide at trial whether Applicant had sufficient knowledge prior to the incident and sufficiently participated in helping carry out the crime, but said Applicant was aware of such. With all of this in mind, Applicant made the voluntary and informed decision not to "roll the dice" with the murder charge at trial, to rather accept an advantageous plea offer extended by the state for a lesser included offense carrying a guaranteed lesser sentence. Accordingly, it is clear to this Court Applicant made a "voluntary and intelligent choice among alternative courses of action" available to him at the time.

While the record may be read in a way that reflects some hesitancy in Applicant's willingness to admit his wrongful conduct, counsel credibly testified Applicant had no issue admitting his guilt in their pretrial meetings, as well as explicitly noted Applicant never indicated to counsel prior to or during the plea hearing that he did not want to enter the plea. In fact, the plea judge undertook extensive precautions during the two-day, sixty-two page plea to ensure Applicant gave full and factually sufficient admissions of facts to serve as a sufficient basis for the plea.

In particular, Applicant admitted to the following during the course of the plea hearing: he and codefendant discussed robbing the victim the night prior to the incident; Applicant called victim to orchestrate the meeting with he and codefendant the next day; Applicant sat in victim's car while codefendant and victim struggled outside of the car and victim was bludgeoned to death by codefendant; Applicant went to victim as he lay on the ground severely beaten, moaning and barely breathing, and removed money from his pocket; and Applicant destroyed victim's vehicle and other evidence of the crime on his family's property in Sumter County, thereafter enlisting the assistance of his family to return to Columbia. In the end, Applicant readily admitted to the plea judge he "understood" he was guilty of the crime as charged "because [he] was there and acted in the robbery which caused the death" of victim.

Based on a review of the record and Applicant's testimony at the PCR hearing, it is clear Applicant continues to refuse to accept that he can be guilty of a

murder which he did not personally, physically commit. Despite plea counsel, PCR counsel and this Court detailing to Applicant how accomplice liability provides for guilt in precisely such a scenario under the right facts, Applicant continues to ignore his obvious understanding of such in an effort to challenge his plea. "Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is criminally responsible for everything done by his confederate incidental to the execution of the common design an purpose." Barber v. State, 393 S.C. 232, 236, 712 S.E.2d 436, 439 (2011); citing State v. Mattison, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010). Clearly, Applicant's admissions in his statements to law enforcement alone created a substantial likelihood a jury could convict him of murder under an accomplice liability theory, as Applicant admitted to discussing the robbery the night before with the codefendant and to being the person who actually initiated contact with the victim the following day, seemingly to carry out the robbery which resulted in the victim's death. Further, Applicant's admissions on the record at the plea hearing as noted above create a substantial factual basis for the court's acceptance of his guilty plea for voluntary manslaughter. Therefore, even if considered on the merits, Applicant's request for relief based on this allegation must be denied.

(R. at 172-75.)

The undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground Two. "A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "A valid guilty plea requires the defendant to have 'a full understanding of the charges against him and the possible consequences of his plea.'" Meyer v. Branker, 506 F.3d 358, 366 (4th Cir. 2007) (quoting Brady v. United States, 397 U.S. 742, 749 n.6 (1970)). A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970) (citations omitted).

In the case *sub judice*, after Petitioner indicated he wanted to plead guilty to voluntary manslaughter, Petitioner indicated he understood the sentencing range for a voluntary manslaughter conviction was "not more than 30 years or less than two years." (R. at 5.) Petitioner stated he understood that whether he would be sentenced "to two years or 30 years or anything in between" was up to the judge. (R. at 5-6.) Petitioner indicated he understood that by pleading guilty, he was

14

giving up his right to a jury trial, the right to confront witnesses against him, the right to challenge the State's evidence, the right to present a defense, and the right to remain silent. (R. at 6-7.) Petitioner also stated he understood that if he had a jury trial, he would be presumed innocent and could not be found guilty unless the State convinced each and every juror that he was guilty beyond a reasonable doubt. (R. at 6.) He stated that he was satisfied with his attorney. (R. at 7.) Petitioner answered "Yes. Yes, sir," when Judge Newman asked Petitioner:

> And from your information that you received as far as the evidence that the State has against you, do you believe that if you were to have a jury trial that you would most likely be found guilty?

(R. at 7.) Petitioner indicated he had enough time to make up his mind as to how he wanted to proceed with the case. (R. at 8.) The following exchange occurred during Petitioner's plea colloquy:

> Q. All right. All right. Is this guilty plea a free and voluntary plea?
>
> A. Yes, sir.
>
> Q. Has anyone threatened you, pressured you, or done anything to force you to plead guilty?
>
> A. No sir.

(R. at 8.) A review of the plea hearing supports the state court's conclusion that the plea was knowing and voluntary; the judge went over the rights Petitioner was giving up by pleading guilty, and Petitioner indicated he understood he was waiving those rights. Petitioner stated that he understood the sentencing range and that his plea was voluntary. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).

It is clear from a careful review of the transcript of the plea hearing that Petitioner did not agree to all of the facts as stated by the solicitor. (See R. at 9-22.) Petitioner stated at the hearing that he did not join his codefendant in planning the robbery, but after the codefendant beat the victim, Petitioner went to the victim's body and grabbed at least forty dollars from the victim's pockets.

15

(R. at 9, 13.) The victim was still breathing heavily at the time Petitioner retrieved the money from the victim's pockets. (R. at 13.) Petitioner stated he did not know how the victim's pants got pulled down as Petitioner was "in the truck." (R. at 13.) Petitioner stated that he and his codefendant drove the victim's vehicle to Sumter where the vehicle was burned; Petitioner admitted that he "specifically is the one who had ties and connections with Sumter."  (R. at 14.) Petitioner denied that he poured gas on the car or lit the car on fire; Petitioner stated that he was in the truck. (R. at 15.) Petitioner stated that he did not ever have the gun and "never knew there was a knife until" he was told "there were stab wounds and stuff." (R. at 16.)

The solicitor indicated that the State "would have been proceeding under a theory of hand of one/hand of all" and that "while [Petitioner] may not have delivered the final blow, we believe he is responsible for the death" of the victim. (R. at 19.) When the judge asked Petitioner what he did that made him guilty of manslaughter, the Petitioner first said, "I was there and I didn't report it. I knew what happened, but I didn't report it to anybody." (R. at 19.) The judge stated that was "not going to cut it. Mere presence does not make" Petitioner guilty. (R. at 19.) After counsel explained the theory of accomplice liability, the judge again asked Petitioner, "What did you do that makes you guilty?" (R. at 21.) Petitioner stated that he witnessed the crime and did not report it. (R. at 21.) When the judge said witnessing a crime and not reporting it was a different crime, Petitioner stated, "And I acted and I knew what was going on. I participated in it." (R. at 21.) The judge asked Petitioner how he participated; Petitioner stated, "The disposing of the vehicle and I did–I got the money out of his pocket, so that means I participated in getting the robbery so . . ." (R. at 21-22.) At that point, the judge called on counsel, and transcript reads as follows:

> Mr. Roberson: Your Honor, I think, if I understand the law correctly, the consequences of engaging in a criminal act, all of the acts that occurred therefrom, all persons present in the act are guilty as if he individually committed the offense. I'm not–I'm not certain that he knew or certain whether or not [the codefendant] was serious about the robbery, but it certainly had been discussed. And I don't know if he knew [the codefendant] to the extent that he understood he had the capacity to do it. **The other thing is when [the codefendant] pulled the gun and stuck it to [the victim's] head and said give it up, my client jumped out and moved around**

16

**to the driver's side.** He should have departed the scene at that time, but I think he probably had full access to the truck at that point. But he stuck around as the fight proceeded. **Then he went back to complete what turns out to be one of the consequences of [the codefendant] pulling the gun, that is, to rob him**.

The death happened as a result of [the victim] fighting back and the fight continuing until at some point I guess he was rendered helpless and his death resulted therefrom. I believe even with that minimal contact it's sufficient for a jury to find based on the inferences that I think this Court will charge the jury–I believe that would be sufficient for a court to find his culpability enough to be criminally responsible as if he were a principal in that single act.

The Court: Do you agree with that?

Mr. Greene: Yes, sir.

(R. at 22-23 (emphasis added).)

Although detailed above, the state court's discussion of Petitioner's admissions during the guilty plea is worth reiterating:

[Petitioner] and codefendant discussed robbing the victim the night prior to the incident; Applicant called victim to orchestrate the meeting with he and codefendant the next day; Applicant sat in victim's car while codefendant and victim struggled outside of the car and victim was bludgeoned to death by codefendant; Applicant went to victim as he lay on the ground severely beaten, moaning and barely breathing, and removed money from his pocket; and Applicant destroyed victim's vehicle and other evidence of the crime on his family's property in Sumter County, thereafter enlisting the assistance of his family to return to Columbia. In the end, Applicant readily admitted to the plea judge he "understood" he was guilty of the crime as charged "because [he] was there and acted in the robbery which caused the death" of victim.

(R. at 174.) The state court concluded these admissions "create a substantial factual basis for the court's acceptance of his guilty plea for voluntary manslaughter." (R. at 175.) Of course, the state court is the final arbiter on state law, and the state court's conclusion that Petitioner's admissions created a factual basis for the plea under state law is not subject to federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990))). Moreover, the Petitioner admitted at the plea hearing that after his codefendant pulled a gun on the victim, and the struggle between the victim and the codefendant spilled outside of the vehicle, Petitioner *exited the passenger side of the vehicle and ran over and got into the driver's side*. (<u>See</u> R. at 9-13, 22-23, 56.) Contrary to Petitioner's assertions in the instant habeas action, those admissions do in fact provide a factual basis for his plea.[2] <u>See Barber v. State</u>, 393 S.C. 232, 236-37, 712 S.E.2d 436, 439 (2011) ("Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." (quotation marks and citation omitted)); <u>see also State v. Harry</u>, —S.E.2d—, 2015 WL 4464101, at *3 (S.C. Ct. App. July 22, 2015) ("Except in rare situations, a person committing an unlawful act is legally responsible for all natural or necessary consequences thereof. One combining and confederating with others to accomplish an illegal purpose is criminally liable for everything done by either him or his confederates which follows incidentally in the execution of a common design as one of the probable and natural consequences, *though not intended as a part of the original design or common plan*." (quotation marks and citation omitted)); <u>State v. Fields</u>, 314 S.C. 144, 146 n.1, 442 S.E.2d 181, 182 n.1 (1994) ("Where two persons combine to commit an unlawful act and in its execution a homicide is committed as a probable or natural consequence thereof, all present and participating in the unlawful act are as guilty as the one who committed the fatal act." (citation omitted)). The undersigned therefore recommends granting summary judgment to Respondent on Ground Two.

---

[2]Additionally, as the state court noted, the "Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." <u>North Carolina v. Alford</u>, 400 U.S. 25, 36 (1970).

### C.      Ground Three

In Ground Three, Petitioner contends counsel was ineffective "in that counsel failed to thoroughly and accurately advise Petitioner concerning the law as it relates to accomplice liability and the potential application of the law of accomplice liability to the facts in his case." (Dkt. No. 1-1 at 8 of 8.) As Respondent notes, Petitioner did not raise the instant claim during his PCR proceedings; it is therefore procedurally barred. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan. 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion).

In his Response in Opposition to Respondent's Motion for Summary Judgment, Petitioner "asks this Court to review this issue on its merits" pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012). (See Dkt. No. 22 at 14.) Pursuant to Martinez, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 132 S. Ct. at 1315. To establish that PCR Counsel provided ineffective assistance of counsel, Petitioner must show that: (1) his counsel's performance "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. Strickland, 466 U.S. at 687-88. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Preyor v. Stephens, 537 F. App'x 412, 421 (5th Cir. 2013) ("To establish ineffective assistance of his initial state habeas counsel, [Petitioner] must show both that habeas counsel's performance . . . was deficient and that he was prejudiced by the deficient performance—that is, there is a reasonable probability that he would have been granted state habeas relief had the claims been presented in the first state habeas application."); Foley v. White, No. 6:00-CV-552-DCR-REW, 2012 WL 6965070,

at *9 (E.D. Ky. Nov. 15, 2012), adopted at 2013 WL 375185 (E.D. Ky. Jan. 30, 2013) ("In the context of <u>Martinez</u>, a demonstration of prejudice would require [Petitioner] to show that, but for post-conviction counsel's errors, there is a reasonable probability he 'would have received relief on a claim of ineffective assistance of trial counsel in state court.'" (quoting <u>Leavitt v. Arave</u>, No. 1:93-cv-0024-BLW, 2012 WL 1995091, at *10 (D. Idaho June 1, 2012))); <u>Horonzy v. Smith</u>, No. 1:11-cv-00235-EJL, 2012 WL 4017927, at *6 (D. Idaho Sept. 12, 2012) ("The application of the <u>Strickland</u> test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one.").

The undersigned recommends granting summary judgment to Respondent as to Ground Three. Petitioner has not shown a reasonable probability that he would have received relief on this ineffective assistance claim had PCR counsel raised it. Although Petitioner speculates herein that counsel was misinformed about the law of accomplice liability, the record does not support that assertion. As explained in the analysis with respect to Ground Two, Petitioner's admissions do in fact provide a factual basis to support Petitioner's guilty plea. Petitioner has not demonstrated that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." <u>Martinez</u>, 132 S. Ct. at 1318. Accordingly, the undersigned recommends concluding that the procedural default precludes federal habeas review. <u>Martinez</u>, 132 S. Ct. at 1319.

**CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary

Judgment (Dkt. No. 10) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH

PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[3]

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 27, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[3]    Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken
to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of
process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's
assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court
is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000);
Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability
has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).